**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

MAR 19 2020

JAMES W. McCORMACK, CLERK
By: _____ DEP CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS

| | |
|---|---|
| ROBERT LANGE,<br>*On Behalf of Himself and All Others Similarly Situated,*<br><br>  Plaintiff,<br><br>v.<br><br>ARVEST CENTRAL MORTGAGE CO.,<br><br>  Defendant. | Case No. 4:20cv293-LPR<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED**<br><br>This case assigned to District Judge Rudofsky<br>and to Magistrate Judge Volpe |

Plaintiff Robert Lange, on behalf of himself and all others similarly situated, alleges breach of contract and violations of the Texas Finance Code §§ 392 *et seq.* and in support thereof states as follows:

## INTRODUCTION

1. Defendant Arvest Central Mortgage Co. ("Arvest"), a servicer of residential mortgages, routinely violates state debt collection law and breaches the uniform terms of borrowers' deeds of trusts ("Uniform Mortgages") by charging and collecting illegal processing fees when borrowers pay their monthly mortgage by phone or online ("Pay-to-Pay Fees"). Arvest charges homeowners a fee of $10.00 for making mortgage payments over the phone with a customer service representative, and $5.00 for making mortgage payments online or over the phone with an Interactive Voice Response ("IVR") system.

2. Arvest services mortgages throughout the United States and is supposed to be compensated out of the interest paid on each borrower's monthly payment—not via additional "service" fees that do not reflect the cost to Arvest of providing such services. Under Texas law, Arvest cannot mark-up the amounts it pays third parties to provide

borrowers' services and impose unauthorized charges to create a profit center for itself. In addition, the Uniform Mortgage also bars Arvest from charging fees prohibited by applicable law. Arvest's Pay-to-Pay Fees violate Texas's prohibition on charging fees not expressly provided for in the contract, and thus also violate the Uniform Mortgage.

3. Arvest charges users fees that far exceeded the cost to Arvest to process the mortgage payments, which, based on industry practice, is typically around $0.50 per payment. Arvest pockets the difference ($4.50 and $9.50 per payment) as profit. Arvest leverages its position of power over homeowners, demands exorbitant Pay-to-Pay Fees, and profits from the inflated charges it imposes on its borrowers in violation of Texas law. And, in turn, it violates its contractual obligations to Dr. Lange and other parties to the Uniform Mortgage.

4. Plaintiff Robert Lange paid these Pay-to-Pay Fees, and he brings this class action lawsuit individually and on behalf of all similarly situated putative class members to recover the unlawfully charged Pay-to-Pay Fees.

## JURISDICTION AND VENUE

5. This Court has personal jurisdiction because Arvest conducts business in Texas and commits torts in Texas as described in this Complaint.

6. Subject matter jurisdiction exists under the Class Action Fairness Act because diversity exists between the defendant and at least one class member and the amount in controversy exceeds $5,000,000.

7. Venue is proper because this is where the cause of action occurred.

## PARTIES

8. Plaintiff Robert Lange is a natural person residing in Texas with a mortgage loan serviced by Arvest. Dr. Lange makes loan payments online and each time he does so,

Arvest charges him a Pay-to-Pay Fee. For example, on or about November 29, 2019, Arvest charged Dr. Lange $5.00 for making a mortgage payment online.

9. Defendant Arvest Central Mortgage Co. is an Arkansas corporation with its principal place of business in Arkansas.

## APPLICABLE LAW

### Texas Finance Code

10. Chapter 392 of the Texas Finance Code protects Texas consumers from deceptive and predatory debt collection practices.

11. The Texas Finance Code defines "consumer debt" as "an obligation, or an alleged obligation, primarily for personal, family, or household purposes and arising from a transaction or alleged transaction." Tex. Fin. Code § 392.001(2).

12. A "debt collector" is a person who "directly or indirectly engages in debt collection," which is in turn defined as "an action, conduct, or practice in collecting . . . consumer debts that are due or alleged to be due a creditor." Tex. Fin. Code §§ 392.001(5)-(6).

13. The Texas Finance Code prohibits (1) collecting or attempting to collect a ... charge, fee, or expense incidental to the obligation unless the ... incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer." Tex. Fin. Code § 392.303(a)(2).

14. The Texas Finance Code also prohibits representing that a consumer debt "may be increased by the addition of ... service fees, or other charges if a written contract or statute does not authorize the additional fees or charges." Tex. Fin. Code § 392.304(a)(12).

## FACTUAL ALLEGATIONS

15. Arvest is a loan servicer that operates around the country and in this District.

16. Each time a mortgage borrower whose loan is serviced by Arvest makes a payment online or over the phone (a "Pay-to-Pay Transaction"), Arvest charges the borrower a Pay-to-Pay Fee: $10.00 for telephone payments with a customer representative, and $5.00 for payments made online or over the phone with IVR.

17. The usual cost that a servicer like Arvest pays to process Pay-to-Pay Transactions is $0.50 or less per transaction. Therefore, the actual cost to Arvest to process the Pay-to-Pay Transactions is well below the amounts charged to borrows, and Arvest pockets the difference as profit.

18. The Uniform Mortgages of Arvest's customers do not authorize Arvest to charge Pay-to-Pay Fees. In fact, the Pay-to-Pay Fees violate borrowers' mortgages.

### Named Plaintiff's Facts

19. On or about May 26, 2017, Dr. Lange purchased a home in Forney County, Texas, secured by a deed of trust (the "Mortgage Agreement"). The Mortgage Agreement is attached as **Exhibit A.** Dr. Lange took out the mortgage loan secured by his property for personal, family, or household uses.

20. At some point, Arvest acquired the servicing rights to Dr. Lange's loan.

21. Dr. Lange makes loan payments online and each time he does so, Arvest charges him a Pay-to-Pay Fee. For example, on or about November 29, 2019, Arvest charged Dr. Lange $5.00 for making a mortgage payment online.

22. These fees are not authorized by the Mortgage Agreement.

23. Charging Pay-to-Pay Fees not authorized by the Mortgage Agreement violates the Texas Finance Code because the Mortgage Agreement does not expressly allow Defendant to charge Pay-to-Pay Fees. Tex. Fin. Code § 392.303(a)(2); *id.* § 392.304(a)(12).

24. Arvest collects the Pay-to-Pay Fees even though it knows that such fees are not authorized under the Mortgage Agreement and it therefore has no right to collect them.

25. Like other borrowers whose mortgages are serviced by Arvest, Dr. Lange's mortgage contains standard language from the Fannie Mae Single-Family Uniform Instrument.

26. The Mortgage Agreement states that "Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law." *Id.* ¶ 14.

27. "Applicable Law" is defined as "all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions." *Id.* at 2 ¶ J.

28. The Mortgage Agreement further states that it is governed by "federal law and the law of the jurisdiction in which the property is located," i.e. Texas. Ex. A ¶ 16.

29. By collecting fees in violation of the Texas Finance Code ("Applicable Law"), Arvest breached the uniform covenants of the Mortgage Agreement.

30. Even if Arvest is allowed to collect a fee under the auspice that it is a default-related fee under Paragraph 9 of the Mortgage Agreement, Arvest's demand for payment of Pay-to-Pay Fees was a direct breach of that paragraph, too. Paragraph 9 states that only "amounts *disbursed* by Lender under this Section 9 shall become additional debt of

Borrower." Ex. A ¶ 9. Arvest collected more than the amounts it disbursed to process the Pay-to-Pay Transactions.

31. The above paragraphs are contained in the Uniform Covenants section of the Mortgage Agreement. Arvest has thus breached its contracts on a class-wide basis.

32. Prior to filing this Complaint, Dr. Lange made a written pre-suit demand upon Arvest.

33. Arvest was given a reasonable opportunity to cure the breaches and violations of law complained of herein but has failed to do so.

## CLASS ACTION ALLEGATIONS

34. Plaintiff Lange brings this action under Federal Rule of Civil Procedure 23 on behalf of the following class of persons (the "Class") subject to modification after discovery and case development:

> **All persons (1) with a residential mortgage loan securing a property in Texas, (2) originated or serviced by Arvest, and (3) who paid a fee to Arvest for making a loan payment by telephone, IVR, or the internet, during the applicable statutes of limitations through the date a class is certified.**

35. Class members are identifiable through Defendant's records and payment databases.

36. Excluded from the class are the Defendant; any entities in which it has a controlling interest; its agents and employees; and any Judge to whom this action is assigned and any member of such Judge's staff and immediate family.

37. Plaintiff proposes that he serve as class representative.

38. Plaintiff and the Class have all been harmed by the actions of Defendant.

39. Numerosity is satisfied. There are thousands of class members. Individual joinder of these persons is impracticable.

40. There are questions of law and fact common to Plaintiff and to the Class, including, but not limited to:

    a. Whether Defendant assessed Pay-to-Pay Fees on Class members;

    b. Whether Defendant breached its contracts with borrowers by charging Pay-to-Pay Fees not authorized by their mortgage agreements;

    c. Whether Defendant violated the Texas Finance Code by charging Pay-to-Pay Fees not due;

    d. Whether Defendant's cost to process Pay-to-Pay Transactions is less than the amount that it charged for Pay-to-Pay Fees;

    e. Whether Plaintiff and the Class were damaged by Defendant's conduct;

    f. Whether Plaintiff and the Class are entitled to damages as a result of Defendant's actions;

    g. Whether Plaintiff and the Class are entitled to restitution; and

    h. Whether Plaintiff and the Class are entitled to attorney's fees and costs.

41. Plaintiff's claims are typical of the claims of the Class members. Defendant charged Plaintiff Pay-to-Pay Fees in the same manner as the rest of the Class members. Plaintiff and the Class members entered into uniform covenants in their Mortgage Agreements that prohibit Pay-to-Pay charges or, at most, cap the amount of Pay-to-Pay Fees allowed to be charged at the actual amount disbursed by Defendant to process Pay-to-Pay Transactions.

42. Plaintiff is an adequate class representative because Plaintiff's interests do not conflict with the interests of the Class members and Plaintiff will adequately and fairly

protect the interests of the Class members. Plaintiff has taken actions before filing this amended complaint, by hiring skilled and experienced counsel, and by making a pre-suit demand on behalf of Class members to protect the interests of the Class.

43. Common questions of law and fact predominate over questions affecting only individual Class members, and a class action is the superior method for fair and efficient adjudication of this controversy.

44. The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

## COUNT I
### Breach of Contract
### On Behalf of Plaintiff and the Class

45. Paragraphs 1 to 44 are incorporated herein by reference.

46. Plaintiff and the Class members entered into contracts with Defendant. Defendant breached its contracts with Plaintiff and the Class members when it charged Pay-to-Pay Fees not agreed to in the Uniform Mortgages, specifically prohibited by Uniform Mortgages, and in excess of the amounts disbursed by Defendant to process the cost of Pay-to-Pay Transactions.

47. Dr. Lange purchased a home subject to the Mortgage Agreement. *See* Ex. A. When Arvest became the servicer of his mortgage, it became bound as an assignee by the Mortgage Agreement. Defendant was a party to the Mortgage Agreement whereby money was lent to Dr. Lange to purchase property in exchange for certain payment over time.

48. Dr. Lange makes loan payments online and each time he does so, Arvest charges him a Pay-to-Pay Fee. For example, on or about November 29, 2019, Arvest charged Dr. Lange $5.00 for making a mortgage payment online.

49. These fees are not authorized by the Mortgage Agreement.

50. Charging Pay-to-Pay Fees not authorized by the Mortgage Agreement violates Texas Finance Code §§ 392.303 and 392.304 because the Mortgage Agreement does not expressly allow Defendant to charge Pay-to-Pay Fees. Tex. Fin. Code § 392.303(a)(2); *id.* § 392.304(a)(12).

51. Arvest collects the Pay-to-Pay Fees even though it knows that such fees are not authorized under the Mortgage Agreement and it therefore has no right to collect them.

52. Like other borrowers whose mortgages are serviced by Arvest, Dr. Lange's mortgage incorporates standard language from Fannie Mae model mortgages.

53. Like other Fannie Mae mortgages, the Mortgage Agreement states that "Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law." *Id.* ¶ 14.

54. "Applicable Law" is defined as "all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions." *Id.* at 2 ¶ J.

55. The Mortgage Agreement further states that it is governed by "federal law and the law of the jurisdiction in which the property is located," i.e. Texas. Ex. A ¶ 16.

56. By collecting fees in violation of the Texas Finance Code ("Applicable Law"), Arvest breached the uniform covenants of the Mortgage Agreement.

57. Even if Arvest is allowed to collect a fee under the auspice that it is a default-related fee under Paragraph 9 of the Mortgage Agreement, Arvest's demand for payment of Pay-to-Pay Fees was a direct breach of that paragraph, too. Paragraph 9 states that only "amounts *disbursed* by Lender under this Section 9 shall become additional debt of

Borrower." Ex. A ¶ 9. Arvest collected more than the amounts it disbursed to process the Pay-to-Pay Transactions.

58. The above paragraphs are contained in the Uniform Covenants section of the Mortgage Agreement. Arvest has thus breached its contracts on a class-wide basis.

59. Plaintiff and the Class Members were harmed by Defendant's breaches.

## COUNT II
### Violation of the Texas Finance Code
### On behalf of Plaintiff and the Class

60. Paragraphs 1 to 44 are hereby incorporated by reference.

61. Chapter 392 of the Texas Finance Code protects Texas consumers from deceptive and predatory debt collection practices.

62. The Texas Finance Code defines "consumer debt" as "an obligation, or an alleged obligation, primarily for personal, family, or household purposes and arising from a transaction or alleged transaction." Tex. Fin. Code § 392.001(2).

63. A "debt collector" is a person who "directly or indirectly engages in debt collection," which is in turn defined as "an action, conduct, or practice in collecting . . . consumer debts that are due or alleged to be due a creditor." Tex. Fin. Code §§ 392.001(5)-(6).

64. Plaintiff and the Class members took out consumer debt when they took out mortgages in order to acquire real property for personal, family, or household uses. Plaintiff took out the mortgage loan secured by Plaintiff's property and now serviced by Defendant for personal, family, or household uses. *See* Tex. Fin. Code § 392.001(2).

65. Defendant is a debt collector because it directly or indirectly engages in debt collection.

66. The Texas Finance Code prohibits "debt collectors" such as Defendant from (1) "collecting or attempting to collect a ... charge, fee, or expense incidental to the obligation unless the ... incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer." Tex. Fin. Code § 392.303(a)(2).

67. It also prohibits "debt collectors" such as Defendant from representing that a consumer debt "may be increased by the addition of ... service fees, or other charges if a written contract or statute does not authorize the additional fees or charges." Tex. Fin. Code § 392.304(a)(12).

68. The Mortgage Agreements of Plaintiff and the Class members did not expressly authorize Defendant to collect Pay-to-Pay Fees, and at most permitted Defendant to assess amounts "disbursed" to process Pay-to-Pay Transactions. Despite this, Defendant represented to Plaintiff and the Class members that it had the right to collect Pay-to-Pay Fees, and collected them from Plaintiff and the Class members.

69. As a result of Defendant's violations of the Texas Finance Code, Plaintiff and the Class members were harmed. Plaintiff and the Class members are entitled to damages and reasonable attorneys' fees and costs to the extent permitted by law.

## PRAYER FOR RELIEF

Wherefore, Plaintiff, on behalf of himself and others similarly situated, respectfully requests that the Court:

1. Certify the proposed Class pursuant to Rule 23 of the Federal Rules of Civil Procedure;

2. Award damages, including compensatory and exemplary damages, to Plaintiff and the Class in an amount to be determined at trial;

3. Award statutory damages and/or penalties to Plaintiff and the Class;

4. Permanently enjoin Defendant from the wrongful and unlawful conduct alleged herein;

5. Award Defendant and the Class their expenses and costs of suit, including reasonable attorneys' fees to the extent provided by law;

6. Award pre- and post-judgment interest to the extent provided by law; and

7. Award such further relief as the Court deems appropriate.

**PLAINTIFF DEMANDS A JURY ON ALL ISSUES SO TRIABLE.**

Dated: March 16, 2020

Respectfully Submitted,

*/s/ James L. Kauffman*

James L. Kauffman
(Ark. Bar. No. 20003050)
BAILEY & GLASSER LLP
1055 Thomas Jefferson St. NW, Suite 540
Washington, DC 20007
(202) 463-2101 (p)
(202) 463-2103 (f)
jkauffman@baileyglasser.com

Hassan A. Zavareei (*pro hac vice* application forthcoming)
TYCKO & ZAVAREEI LLP
1828 L Street NW, Suite 1000
Washington, D.C. 20036
202-973-0900 (p)
202-973-0950 (f)
hzavareei@tzlegal.com
kaizpuru@tzlegal.com

*Counsel for Plaintiff and the Putative Class*